### George Riggins, alias Wiggins, v. The State.

#### No. 2237. Decided February 6, 1901.

**1. Assault to Murder—View by Jury of the Locus in Quo—Statutes Construed.**

Article 1451, Revised Civil Statutes, provides, "that all vouchers, views, etc., shall stand repealed." This article is not affected by article 22 Code of Criminal Procedure, which provides that "a defendant in a criminal case may waive any right secured to him except the right of trial by jury in a felony case." The two articles must be construed together so as to uphold the validity of both. Where the prosecuting attorney proposed, in the presence of the jury, to take the prisoner, attorneys, judge, officers of the court, and the jury to the place where the assault was committed, that they might examine the grounds; to which counsel for defendant and the defendant himself finally agreed, and the court, jury, defendant, attorneys, and officers did go upon and examine the premises; Held, reversible error. The fact that defendant consented to such action would not and could not render legal an act which the statute positively inhibits. Following Smith v. State, 42 Texas, 444. Henderson, J., dissents and distinguishes this case from the Smith case.

**2. Same—Receiving Other Evidence by the Jury.**

The above construction of article 1451, Revised Civil Statutes, is fortified by article 81, section 7, Code of Criminal Procedure, which makes it reversible error for the jury to receive other testimony than that of the sworn witnesses under the sanction of the court adduced on the trial under the rules of evidence.

**3. Same—Evidence of Another Distinct Offense.**

On a trial for assault with intent to murder, it was error to permit testimony to the effect, that on the evening after the alleged offense, the officer who arrested defendant found that he was carrying a pistol on his person. The evidence was not admissible, because it proved a separate and distinct crime against defendant.

Appeal from the Criminal District Court of Dallas. Tried below before Hon. Charles F. Clint.

Appeal from a conviction of assault with intent to murder; penalty, seven years imprisonment in the penitentiary.

The indictment charged appellant with assault with intent to murder one M. Jacobi, on the 28th of July, 1900.

Appellant was a negro, who worked for a drug store opposite where the assaulted party, Jacobi, clerked in a store. Appellant had been in the habit of passing through the store in which Jacobi clerked until a short time before the assault, when Jacobi caught him stealing some peaches and charged him with it. They had a violent, wordy altercation, and defendant indulged in serious threats against Jacobi. Jacobi slept in the rear of the store building—his bed being close to a window, and this window opened upon an alley running in the rear of the store. On the night of the 28th of July, while Jacobi was asleep in his bed, the window being up, he was struck in the head with an ax by some one standing in the alley, his skull being badly fractured and one of his eyes put out. Appellant was seen in a vacant lot, about seventy feet from the store in which Jacobi was sleeping, about 12 o'clock that night, by Clark, a witness, who said he easily recognized him by the electric lights. On the morning after the assault officers examined and inspected the ground in the rear of the store and found shoe tracks of a peculiar character, which corresponded exactl⸺ with

the tracks of shoes taken off appellant when they arrested him. There were other circumstances tending to identify him as the guilty party.

During the trial, the court, attorneys, defendant, jury, and officers were taken from the court room to the place where the offense was committed, and they there viewed and inspected the premises, or locus in quo. The circumstances attendant upon this proceeding are fully shown in defendant's bill of exceptions copied into the opinion below. The defense was alibi.

*Rob't B. Seay,* for appellant, cited Smith v. State, 42 Texas, 444; Bouldin v. State, 8 Texas Criminal Appeals, 335.

*D. E. Simmons,* Acting Assistant Attorney-General, for the State.

BROOKS, JUDGE.—Appellant was convicted of an assault with intent to murder, and his punishment assessed at seven years confinement in the penitentiary.

In the view we take of this record, it is only necessary to consider two questions. By bill of exceptions number 1 it is made to appear: "That the county attorney proposed in the presence of the jury to take the prisoner, attorneys, judge, officers of the court, and the jury on the ground where the alleged assault with intent to murder was committed, to examine back of the store and adjoining grounds. To this proposition counsel for defendant replied, 'There is no use of making a proposition of that kind, because such a proposition would be perfectly illegal and void.' Whereupon, the court asked counsel for defendant, 'Will you agree to it?' Counsel for defendant refused to answer. Thereupon the court the second time asked defendant's counsel if he would agree to take the jury and defendant on the grounds. Counsel for defendant then said he would agree to the proposition of the county attorney. The court also asked defendant if he would agree, and he assented. Whereupon the court adjourned to the grounds, and the jury, together with the officers, carefully removed the rubbish and examined the grounds and the soil, and remained upon the grounds, about ten minutes, and then adjourned to the courthouse, defendant having accompanied the court and jury, and being present at the scene with the court and jury and counsel. Wherefore defendant now presents this bill of exceptions, and states to the court that it was error for the county attorney to make such a proposition in the presence of the jury, because, to refuse the same would be prejudicial to defend- ant. It was improper and erroneous for the court to make said proposition to defendant's counsel and to defendant, and thereby drive defendant to accept or refuse. It was error for the court, under Texas law, to allow the jury to go out and obtain evidence which was not testified to by any witness in the courthouse, where all proceedings are required to be held, and to allow the jury to obtain evidence not testified to by any witness, and about which defendant could not cross-

examine the witnesses, and which could not be put in the records of the cause." The court appends the following explanation to the bill: "If defendant's counsel ever made any statement about it being illegal to take the jury and prisoner to the scene above mentioned until this bill of exceptions was presented on September 26, 1900 (five days after the trial), the court did not hear such statement. It is a fact that both defendant's counsel and defendant in person agreed to the proceedings had as cited in the bill, and that defendant in person and his attorneys went and were present, and that the first objection to the proceeding was made known to the court five days after the trial, to wit, on September 25, 1900." As far back in our jurisprudence as Smith v. State, 42 Texas, 444, appellant's contention has been sustained. Roberts, Chief Justice, delivering the opinion of the court in that case, said: "In order, however, to turn the balance in this conflict of evidence as to the re-marking-of the sow against Smith, Houston brought the sow to town, and after the matter had been thrown in doubt by the contradictory statements of the witnesses, the district attorney proposed to have the jury leave the box, go to the place where the sow was put up, and inspect her ears, so as to determine this doubtful question for themselves by a personal view. The defendant consented to this, which his counsel might have done, whether he thought it a proper proceeding as part of his trial or not, so as to show that he was not afraid of any mode of trial, and because an objection might betray to the jury a want of confidence in their judgment and skill in ascertaining the fact for themselves, whether or not the ears of the sow had been re-marked, by the appearance then exhibited on ·a close personal inspection and view of them." As indicated by appellant in his bill, he was constrained by the peculiar exigencies of the occasion to agree to the proffer, on the part of the county attorney, to view the place of the alleged crime, rather than leave the impression upon the jury he was afraid of the facts that might be disclosed. It was wrong to place appellant in this character of attitude; and further, it was wrong to permit the jury to inspect the premises. Judge Roberts, in the case above cited, further says: "There is thus no authority found in this State for such a mode of enlightening the minds of the jury as to the material facts of a case which they have to try. The fact of such a proposition being made indicates an opinion of a necessity for additional aid to the evidence already adduced, to relieve the case from the doubt and uncertainty in which it was involved by the conflicting evidence." Article 1451, Revised Civil Statutes, provides: "All vouchers, views, essoigns, and also all trials by wager of battle and wager of law, shall stand repealed." . It is true that article 22, Code of Criminal Procedure, provides: "The defendant in a criminal prosecution for any offense may waive any right secured to him by law except the right of trial by jury in a felony case." These articles must be considered together, and when so construed it leaves no doubt that the learned trial court erred in permitting the jury to review the premises. Where

two articles apparently conflict, that construction must be given to the articles that will uphold the validity of both; and the fact that appellant consented to a view of the premises would render legal an act the statute positively prohibits, can not receive our sanction. This construction of article 1451 is fortified by section 7 of article 817, Code of Criminal Procedure, providing that it shall be reversible error for the jury to receive other testimony than that adduced during the progress of the trial. The object of this article is in direct line with the object of article 1451, Revised Civil Statutes, in that it appears to guarantee to appellant a trial upon the evidence, which presupposes sworn testimony adduced under the rules of evidence and the sanction of the court, and not garbled ex parte statements, hearings, impressions or judgments, either of witnesses or of jurors. Appellant's contention is correct, and the court erred in permitting such inspection by the jury. By bill number 4, it is shown, "while the evidence for the State was being taken, and Constable Jacoby was on the witness-stand, the witness testified he arrested defendant about 9 o'clock in the morning, going from defendant's home over towards Bradley & Barrett's drug store, where defendant worked. The State inquired of witness whether or not said Wiggins had any arms on him, and what Wiggins did when he arrested him. Defendant objected to witness answering the question or stating whether arms were upon the person of defendant the next morning after the crime, as it was a separate and distinct offense, in no way connected with the offense charged against defendant, as the proof all went to show that the injured party was struck with an ax, and there was no proof that a pistol was used, and that said testimony was irrelevant and very hurtful and injurious to the defendant's cause. Defendant's objections were overruled and the witness stated that, when witness arrested defendant, he examined him and found no arms on him, but they had not walked far before a large pistol dropped down defendant's leg and the muzzle appeared below the breeches. Another party, who was with Jacoby, jumped out of the buggy with a pistol and grabbed defendant's pistol below the breeches or pants, and defendant caught the same by the handle, the pistol at the time being in his pants' leg, except a part of the muzzle. This testimony was not admissible, since it proved a separate and distinct crime against appellant, in no way connected with, dependent upon, or illustrative of the crime for which appellant was then on trial.

For the errors discussed, the judgment is reversed and the cause remanded.

*Reversed and remanded.*

HENDERSON, JUDGE (dissenting).—A majority of the court hold that the trial judge committed reversible error in permitting the jury to view the locus in quo, where the alleged offense was committed, under the circumstances stated in the bill of exceptions. And, in support of the view taken, Smith v. State, 42 Texas, 444, is relied on.

While that case intimates very strongly that a view taken by the jury, though with permission of the court, would be error, yet the case seems really to have been reversed upon the insufficiency of the evidence. That case, however, was the view of a sow and pigs, where the alteration of the mark was a material inquiry, and of course an inspection of the animals would obviously have some bearing on the question. Whereas here, merely the ground in the vicinity of the house where the alleged offense was committed was viewed by the jury, and this about a month after the alleged offense. No suggestion is made that evidence material to the case was, or could have been, ascertained by the jury in the case at bar, by a view or inspection of the premises by the jury as agreed to by appellant and his counsel. No objection was urged to the proceeding, as the court certifies appellant agreed to it, and he heard of no objection to the view being taken until a bill of exceptions was presented to him five days after the trial. A different question might arise if this procedure had been permitted over the objections of appellant, but I can see no difference, notwithstanding our statute with reference to views, between this character of illegal testimony and other illegal testimony admitted without objection. Certainly it would not present as grave a case as if the jury had taken a view without the agreement of appellant, and without permission on the part of the court. And yet, we have held that, even in such a case, before a reversal would be authorized, some material error, injurious to appellant, must be shown. McDonald v. State, 15 Texas Crim. App., 492; Darter v. State, 39 Texas Crim. Rep., 40; Hardin v. State, 40 Texas Crim. Rep., 208. If a case will not be reversed where a jury may have viewed the premises without permission of appellant and the court, in the absence of some material injury shown, much more ought a case not to be reversed where "the view was taken with the consent of appellant and with the permission of the court, and in the absence of any suggestion of injury. I do not believe that article 1451, Revised Civil Statutes, with reference to views, trial by wager of battle, etc., has the potentiality about it placed thereon by the opinion of a majority of this court. In fact, since the decision in the Smith case, supra, many articles of clothing, weapons, etc., connected with the homicide have been viewed by the jury under the authority of this court; and in a number of the States of the Union "views" of the locus in quo are held to be advantageous in the trial of both civil and criminal cases, and are authorized. 1 Thomp., Trials, secs. 875-916, inclusive. I can not agree to the views expressed on this proposition in the opinion, because I believe it sets a bad precedent. Upon the other proposition I agree with the court, and agree to the reversal of the judgment.