Winford Anthony WEEKS, Appellant,

v.

The STATE of Texas, Appellee.

No. 44525.

Court of Criminal Appeals of Texas.

Jan. 26, 1972.

Rehearing Denied March 8, 1972.

John J. Browne, Houston, (on appeal only), for appellant.

Carol S. Vance, Dist. Atty., James C. Brough and F. M. Stover, Asst. Dist. Attys., Houston, and Jim D. Vollers, State's Atty., Austin, for the State.

## OPINION

DAVIS, Commissioner.

This is an appeal from a conviction for the possession of heroin with punishment assessed by the jury at life.[1]

The appellant, in his first five contentions, complains that the State failed to prove the legality of the attempted arrest

1. See Weeks v. State, Tex.Cr.App., 459 S.W.2d 639; Weeks v. State, Tex.Cr.App., 417 S.W. 2d 716.

and search from which the narcotics were recovered, and that the court should have heard evidence out of the presence of the jury regarding probable cause for the attempted arrest and the reliability of the informer.

The evidence reflects that officers positioned themselves at an overpass above Studemont Street, in Houston, on the evening of August 29, 1967, as the result of a call to the narcotics division of the Houston Police Department; that appellant and one Lehman Ray Thompson were observed standing on the esplanade of Studemont Street next to appellant's car, at which time the following occurred according to the testimony of Officer Collins:

"Q: What did Officer Albert say after he got out of the vehicle?

"A: He hollered at both men that were under the overpass there, 'Hold it. We are police officers.'

"Q: What, if anything, did Winford Weeks do after Officer Albert said, 'Hold it. We are police officers?'

"A: It was about that time when Officer Albert hollered, that the defendant shoved the paper sack to the other man and just after he gave the sack, he turned and jumped in the front seat of the car and left.

"Q: Could you describe the manner in which the defendant got into the car, and I'm speaking of the defendant, Winford Weeks, when he got into his car, and the events that transpired immediately after that?

"A. He was standing only maybe 10 feet from the open door on the driver's side of his car. He ran real fast and jumped in the car and slammed the door closed, and laid down.

"Q. Show the jury how he laid down as best you can, and as best you can recall.

"A: When I saw him, he slammed the door, bending over in the driver's side

and also, he was taking off at the same time, and two shots were fired from within the vehicle.

"Q: Was anyone else in the car with the defendant?

"A: No, sir."

In Gonzales v. State, Tex.Cr.App., 461 S.W.2d 408, two deputy city marshals stopped the accused, after they had observed him fail to obey a stop sign. When one of the marshals approached the vehicle, he saw the accused throw a bag over the hood of the car. A paper bag, later found to contain marihuana, was recovered by one of the officers some ten feet from the car. The accused contended that this marihuana was inadmissible because it had been secured by a search that was incident to an illegal arrest, in that, there was no city ordinance establishing traffic control devices or stop signs, and the accused had not received a citation for any traffic offense. This court held that the State did not "rely upon the fruits of a search of appellant's person or his vehicle incident to an arrest for a traffic offense but only upon marihuana discovered after it was abandoned by the appellant in the presence of the officers and which when found was in plain view of the officers." In Hamilton v. State, Tex.Cr.App., 438 S.W.2d 814, this Court held that where officers alighted from their unmarked automobile and accused observed them and fled, dropping papers of heroin, and officers pursued accused, apprehended him, and searched him, and found nothing incriminatory, the heroin recovered was not inadmissible on ground that it was obtained as the result of a search and seizure. In Harless v. State, Tex.Cr.App., 473 S.W.2d 519, the accused dropped a bag containing marihuana when the officers approached him. This Court held the narcotics were not inadmissible on the ground that they were the fruits of an illegal search. In the instant case, it is clear that the State does not rely upon the fruits of an attempted arrest of appellant but only upon heroin recovered

after appellant attempted to give same to Thompson in the presence of the officers, and which when found, was in plain view of the officers. The seizure of the heroin by the officers under such facts was lawful, and the Court did not err in admitting the same into evidence. We reject appellant's first five contentions.

■ The appellant contends that the Court erred in denying appellant's first motion for continuance in that the Court forced appellant to trial with an attorney not of his own choosing, who was not in a position to adequately represent him, and the Court erred in failing to appoint an attorney for him. The docket sheet reflects that appellant appeared in open court on November 16, 1969, with Attorneys Frank Mabry and Will Gray and stated arrangements for representation were concluded and the names of said attorneys were entered of record as attorneys for appellant, and further, on December 5, 1969, that appellant was duly arraigned and upon appellant's request, hearing on appellant's pretrial motions were passed, pending review of record in another case (record in Thompson trial), and "case set for trial Feb. 16, 1970," and on February 16, 1970, "Reset to February 26, 1970 for trial," and the docket sheet reflects that on February 26, 1970, appellant filed his first motion for continuance. After Nov. 16, 1969, the record reflects that Frank Mabry was the only attorney to appear in court with appellant. Appellant's motion for continuance complained about a problem of communication between appellant and his attorney, Mabry; that his uncle hired Mabry, and that they were unable to work together. Mabry testified that he was employed by appellant's uncle, but that appellant employed him in open court. At the conclusion of the hearing, the motion for continuance was overruled, and Mabry then filed a motion to be permitted to withdraw which was overruled. The appellant testified that he did not want Mabry to be his attorney, and that he would like to have the

State appoint him a lawyer. We conclude that, under the facts herein, the Court did not err in denying appellant's motion for continuance and his counsel's motion to withdraw, when same were made on the first day of trial. See Brown v. State, Tex.Cr.App., 464 S.W.2d 134; Garza v. State, Tex.Cr.App., 440 S.W.2d 860; Estrada v. State, Tex.Cr.App., 406 S.W.2d 448.

■ Appellant complains that the evidence is insufficient to support the verdict finding that appellant possessed the narcotics in question.

Officer Collins testified he saw the bag found to contain heroin in the hands of the appellant, observed appellant thrust it toward the hands of Thompson and flee the scene when the officers appeared. The evidence of appellant's possession of the bag containing heroin is ample to support the jury's verdict. In addition, the flight of appellant is further evidence of his guilt. Thames v. State, Tex.Cr.App., 453 S.W.2d 495; Cawley v. State, Tex.Cr. App., 310 S.W.2d 340. We reject appellant's contention that the evidence is insufficient to support the verdict.

In appellant's contentions, ten through fourteen, complaint is made that the trial court erred in not granting appellant's pretrial motion for discovery and in failing to specifically rule on each item set out in appellant's motion for discovery.

■ The record reflects that when appellant advised the court that arrangements for counsel had been made on November 6, 1969, the court set a hearing on pretrial motions for December 5, 1969, at which time the hearing on appellant's pretrial motions was passed at appellant's request pending review of his co-indictee's trial (Thompson was tried in August, 1968). Appellant's motion for discovery had been filed on December 3, 1969. On February 16, 1970, this case was re-set for February 26, 1970, the record not reflecting the reason for this postponement. On

February 26, 1970, appellant's motion for discovery was heard during which hearing appellant attempted to conduct his case after disagreements with his counsel as to the manner in which the motion should be handled. Counsel for appellant acknowledged that he had received a complete record of the Thompson trial and the following testimony is elicited from appellant's counsel at the hearing:

"Q   And, by reading these statements of facts, you ascertained the names of the people, the location of the offense, and the offense that was alleged?

"A   I have done that, but I do not know if that's all the names of the persons who were present, and I do not know if, in fact, Mr. Weeks might have some witnesses that might furnish an alibi, or other means of defense in this matter, and I have reviewed the witnesses that were produced by the defense and the state in the Lehman Thompson trial, but I don't know what Mr. Weeks has got. It might be a different case altogether.

"Q   Well, certainly, the items you have testified to, that you have done, are all the things that any competent attorney would do in preparation of a case for trial?

"A   Yes, sir. I have tried.

"Q   And, Mr. Mabry, do I understand you did not express an opinion, an opinion as to whether or not the defendant knew the difference between right or wrong?

"A   No, sir, I do not know whether he does or not. I do know I can't get through to him. I can't talk to him. I can't communicate with him."

At this juncture, the Court ordered appellant examined by a psychiatrist and recessed court until the next day. The record reflects that appellant filed a motion for psychiatric examination on February 26, 1970. The following day, Dr. Scher, Consultant Psychiatrist for Harris County, testified that appellant was of sound mind, knew right from wrong, was competent to stand trial and able to assist his attorney in trial of his case "if he so chooses."

The following occurred just before trial:

"THE COURT: Gentlemen, are there any other matters prior to calling the Jury panel?

"MR. MABRY: I would like to state I have filed a Motion for Discovery, and would like the Court to go over the Motions for Discovery as to each item that I have indicated there, for the purposes of protecting the record, and protecting myself."

\*     \*     \*     \*     \*     \*

"THE COURT: Has a copy of that transcript been obtained? (Thompson Case)

"MR. MABRY: Yes, sir, a copy of the transcript, and also the exhibits.

"THE COURT: Are there any matters not answered, or that is not contained in that transcript?

"MR. MABRY: May I have just a moment to go over it with my client?

"THE COURT: Yes, sir.

"MR. MABRY: May I inquire as to the names of the officers that are to be used in this case that are not in the transcript of Mr. Thompson's, Mr. Stover?

"MR. STOVER: Well, the officers I propose or may call in this case are Officer Darrell Moore, Your Honor, this is in response to the defendant's Motion for Discovery. Officer Darrell Moore, Officer D. D. Collins, D. W. Albert, E. J. Stutts, and Officer Clay Zachary. Now, if the defendant is convicted by the jury, there may be other officers testifying on the punishment hearing,

but at this time, I am unable to ascertain just exactly who those will be."

*　*　*　*　*　*

"MR. WEEKS: If Mr. Stover has any more witnesses during the whole complete trial, I would like a Motion to Discover him to present them now.

"THE COURT: That request is denied, inasmuch as it is premature."

After appellant (speaking for himself) had requested that various people from the Houston Post, Houston Chronicle, and a T.V. station, who had written or televised news stories about him, be subpoenaed, the Court made the following statement:

"THE COURT: Mr. Weeks, I'm going to allow all persons to be subpoenaed if they are in the jurisdiction of this Court, but this proceeding is not going to be delayed with these subpoenas being delayed at this belated hour. You have had since October or November to do this, and I'm not going to let this case be delayed because of this subpoenaing. However, these subpoenas will be issued."

Counsel for appellant was then asked if there was anything further before the jury panel is brought in, and the following occurred:

"MR. MABRY: The only thing I would like to ask Mr. Stover is the whereabouts of the automobile?

"MR. STOVER: I have no idea."

Appellant submits no authorities in support of his contentions regarding the motion for discovery. The record is difficult to follow during this phase of the trial due to appellant constantly attempting to conduct the motion for discovery hearing rather than allowing his counsel to go forward with same. The record, in the Thompson trial, had been made available to appellant; the Court had offered to see that witnesses not already subpoenaed by his counsel and desired by appellant were subpoenaed. There is no showing that the location of appellant's automobile, allegedly not disclosed by the State, was not known by appellant and his counsel. See Hinkle v. State, Tex.Cr.App., 442 S.W.2d 728. The only thing we have before us is the statement of the prosecuting attorney that he had no idea about the location of appellant's automobile. We perceive no error.

■ Appellant next contends that he "did not receive a fair trial as contemplated by the due process clause of the Fourteenth Amendment to the Constitution of the United States, in that, throughout the trial the State's witnesses together with the prosecutor embarked on a deliberate scheme to improperly prejudice the defendant before the jury through the use of improper questions and non-responsive answers clearly calculated to inject inadmissible and prejudicial material into the trial."

Appellant sets forth four examples of questions and answers in support of this complaint. We have reviewed the examples appellant has cited and find no objection made to any of them in the trial court. Further, appellant has failed to comply with Art. 40.09, Sec. 9, Vernon's Ann.C.C.P., in setting forth his ground of error and nothing is presented for review.

■ Appellant complains that a proper predicate was not laid for the introduction of two hundred papers of heroin.

Appellant sets forth the testimony of Officer Collins, "It looks like the same 200 papers." The record reflects that the witness was testifying about State's exhibits 2 and 3 and he had testified prior to the foregoing, "That's the evidence that was picked up by me at the scene and tagged by me." There was sufficient identification of State's exhibits 2 and 3 by the witness. While appellant contends that proper chain of custody is not shown, he fails to specify where there is a break in the chain. He further complains that State's exhibits of 200 papers of heroin are not shown to have remained unchanged since they were seized by the officers. The officer testified that he threw away

**316**

the sack the heroin was found in as well as the tape it was wrapped in and some condums in the sack. This is the basis of appellant's complaint that the exhibits were not in the same condition in which they were found. We find no merit in appellant's contentions that the proper predicate was not laid for the introduction of the 200 papers of heroin.

■ Appellant contends that the judgment and sentence are void in that there is a fatal variance between the indictment and said judgment and sentence as to the offense.

The indictment alleges unlawful possession of a narcotic drug, to wit: heroin. The jury verdict finds the defendant guilty as charged in the indictment. The jury verdict as to punishment recited that having found the defendant guilty as charged in the indictment, * * *. The judgment recites that appellant was indicted for the offense of unlawfully possessing a dangerous drug, to wit: heroin. The judgment further recites that the jury finds him guilty as charged in the indictment. The sentence recites a conviction for unlawful possession of a dangerous drug rather than a narcotic. The court's charge is on the offense of unlawful possession of a narcotic drug, to wit: heroin. Article 44.24, Vernon's Ann.C.C.P., provides that this court may reform and correct the judgment as the law and the nature of the case require. The indictment alleged and the jury found that appellant committed the offense of possession of narcotic drug, to wit: heroin. Garcia v. State, Tex.Cr. App., 428 S.W.2d 334. No error is shown.

■ Appellant next contends that the court was in error in not requiring Officer Collins to disclose the name of the informer. In view of our holding earlier in this Opinion that the heroin was recovered after appellant attempted to give same to Thompson, in presence of the officers, and which when found, was in plain view of the officers presents no question about probable cause for search or seizure. No error is shown.

■ Appellant next contends that the court failed to provide sufficient psychiatric tests and examination to ascertain appellant's competency to stand trial. The motion asking for psychiatric examination of appellant was filed the day of the trial and same was granted. Dr. Scher, Director of Psychiatric Services in the Department of Rehabilitation at Baylor College of Medicine and County Psychiatrist, testified he conducted a neurological examination which revealed appellant competent to communicate and to stand trial. Appellant does not specify in what respect he was denied sufficient tests and examinations. We find no merit in this contention.

■ Appellant contends the trial court erred in advising the jury that under the law, there was no provision for a jury view of the scene. In Abell v. State, 109 Tex.Cr.R. 380, 5 S.W.2d 139, this Court said:

"The practice of permitting the jury to view the place where the crime was committed is condemned in this state. Kile v. State, 106 Tex.Cr.R. 328, 291 S.W. 1104; Lovett v. State, 87 Tex.Cr.R. 548, 223 S.W. 210; Fate v. State, 73 Tex.Cr. 278, 164 S.W. 1018; Riggins v. State, 42 Tex.Cr.R. 472, 60 S.W. 877."

*     *     *     *     *     *

"If the jury had received evidence from an inspection of the ground that could have militated against the rights of appellant, and the matter was properly before this court for review, a reversal of the case would necessarily result. Watson v. State, 52 Tex.Cr.R. 85, 105 S.W. 509."

We perceive no error in the court refusing the jury's request to view the scene.

■ Appellant's twenty-first and last contention is that the prison record of appellant was erroneously admitted into evidence at the punishment stage of the trial. Appellant complains that the exhibit fails to reflect on its face that the appellant was present when the court revoked the

probation or that he was represented by counsel. When the State offered Exhibits No. 5 and No. 6, the appellant stated "No objection." Exhibit No. 5 contains an order revoking probation, in Cause No. 1695 from Chambers County, wherein appellant had been convicted for burglary at night with the intent to commit theft. The order is silent as to whether appellant was present or represented by counsel. No objection was made in the trial court, in fact, it was expressly waived. No claims were advanced in the trial court that appellant was not present when probation was revoked or that appellant was without counsel at such hearing to revoke probation in Chambers County. We find that the court was not in error in allowing the introduction of such exhibit when no objection was made in the trial court. See Taylor v. State, Tex.Cr.App., 470 S.W.2d 663; Vera v. State, Tex.Cr.App., 473 S.W. 2d 22.

The judgment and sentence, based upon the indictment, charge, and verdict, are reformed to show that the conviction was for possession of a narcotic drug, to wit: heroin.

The judgment as reformed, is affirmed.

Opinion approved by the Court.